(Not for publication) (Docket Entry Nos. 4, 10)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| INVISTA S.à.r.l., et al., | : | |
| Plaintiffs, | : | Civil No. 08-941 (RBK/JS) |
| v. | : | **OPINION** |
| RHODIA S.A., | : | |
| Defendant. | : | |

Plaintiffs Invista S.à.r.l., Invista Technologies S.à.r.l., and Invista North America S.à.r.l. (collectively, "Invista") filed this lawsuit against Rhodia S.A. ("Rhodia"), seeking injunctive relief and monetary damages for misappropriation and conversion of trade secrets, unfair competition, tortious interference with contracts, and conspiracy to misappropriate trade secrets. Presently before the Court is Rhodia's Motion to Dismiss or, in the Alternative, Stay Proceedings Pending Arbitration. For the reasons set forth below, Rhodia's motion will be denied. In addition, the parties will be ordered to submit briefs on the issue of this Court's subject matter jurisdiction within thirty days of the date of this Opinion. Finally, Invista's Motion for an Expedited Rule 16(b) conference will be dismissed without prejudice.

## I. BACKGROUND

### A. The Joint Venture

In the 1960s, E.I. DuPont de Nemours ("DuPont") developed the "Gen I technology" for manufacturing adiponitrile ("ADN"), a chemical used in the production of nylon. In 1974, DuPont de Nemours France S.A.S. ("DuPont France"), a subsidiary of DuPont, entered into a Joint Venture with Société des Usines Chimiques Rhône-Poulenc ("SUCRP"), a subsidiary of Rhône-Poulenc S.A. ("Rhône-Poulenc"). The purpose of the joint venture, called Butachimie, was to manufacture and sell ADN. The joint venture was governed by a joint venture agreement ("JVA") and a number of ancillary agreements. The JVA provided that neither party would use or disclose to third parties confidential information relating to the production of ADN for fifteen years from the date of disclosure. (Declaration of Jonathan L. Greenblatt ("Greenblatt Decl.") Ex. A (JVA) Art. 9.) The JVA also contained the following arbitration clause:

> The parties hereto agree that all disputes which may arise in connection with this Agreement should be resolved between them and, when this is not possible, such disputes shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce. . . . This arbitration clause shall not apply to those Exhibits [ancillary agreements] which contain their own arbitration clauses.

(Id. at Art. 23.) The ancillary agreements contained similar arbitration clauses, and most of them contained non-disclosure provisions. (Greenblatt Decl. Ex. B Art. III and XVII, Ex. C Art. I and VI, Ex. D Art. VII and XI, Ex. E Art. XII, Ex. F Art. 1 and 7.)

The ownership of Butachimie has been transferred several times since SUCRP and DuPont France entered into the JVA. Today, SUCRP's shares are held by Rhodianyl, a subsidiary of Rhodia. In 2004, affiliates of Invista purchased DuPont's Textiles and Interiors

Business ("DTI"), including the Gen I Technology. As part of the transaction, KoSa France Holding S.à.r.l. ("KoSa France"), an Invista affiliate, acquired DuPont France's interest in Butachimie. Further, DuPont and Invista entered into two agreements whereby DuPont agreed not to compete with Invista in the manufacture of ADN until April 30, 2011, and to maintain the confidentiality of the trade secrets being transferred to Invista.

**B. The Current Dispute and the ICC Arbitration**

On September 19, 2006, Invista announced plans to build an ADN manufacturing facility in Asia. Shortly after this announcement, Rhodia revealed its plans to build an ADN plant in Asia. Invista accused Rhodia of misappropriating the Gen I technology trade secrets it learned through the joint venture and inducing DuPont to breach its agreements with Invista.

On October 3, 2007, Rhodianyl and another Rhodia affiliate, Rhodia Opérations S.A.S., initiated arbitration pursuant to Article 23 of the JVA against plaintiff Invista S.à.r.l., plaintiff Invista North America S.à.r.l., and KoSa France Holding S.à.r.l. before the International Court of Arbitration of the International Chamber of Commerce ("ICC"). Shortly thereafter, the Rhodia claimants added Rhodia as a named party. The Rhodia parties sought a declaratory ruling that, pursuant to the confidentiality provision of the JVA, they have a right to use confidential information that was disclosed to the joint venture more than fifteen years ago.

The Tribunal held a preliminary hearing on July 7, 2007, at which the Terms of Reference were signed. On July 16, 2007, the Tribunal issued a Procedural Timetable, establishing a discovery and briefing schedule. Pursuant to this timetable, the Rhodia parties submitted their Statement of Claim on October 7, 2008. The Invista respondents submitted counterclaims against the Rhodia parties, alleging that Rhodianyl breached the JVA and certain implied duties,

and that Rhodia and Rhodia Operations conspired with or caused Rhodianyl to engage in misconduct and breach its duties to the joint venture. (Greenblatt Decl. Ex. P at 3-4.) Among other relief, the Invista respondents seek "[a] permanent injunction . . . preventing Rhodianyl and, derivatively, any entity in the Rhodia Group to which it wrongfully transferred Confidential Gen I Technology, or allowed Confidential Gen I Technology to be wrongfully transferred, (and their respective employees, officers, directors, agents and assigns) from, anywhere in the world" using, transferring, or benefitting from the Gen I Technology. (Id. at 7.)

In conjunction with their counterclaim, the Invista respondents objected to the arbitral tribunal's jurisdiction over the dispute. First, they argued that the tribunal lacked jurisdiction over the Rhodia parties' claims that should have been brought under agreements other than the JVA. Second, they argued that the arbitral tribunal lacked jurisdiction over Rhodia S.A., Rhodia Opérations S.A.S., Invista S.à.r.l., and Invista North America S.à.r.l. because they had not signed the JVA. (Id. at 2.)

**C. Procedural History of this Litigation**

On October 9, 2007, Invista S.à.r.l. filed suit in Texas state court against Rhodia for misappropriation of trade secrets, unfair competition and conversion. Rhodia removed the case to the United States District Court for the Eastern District of Texas and then filed a motion to dismiss or stay in favor of arbitration. Before ruling on this motion, the court ordered the parties to address the issue of personal jurisdiction. Before the court ruled on the issue of personal jurisdiction or Rhodia's motion to dismiss or stay in favor of arbitration, Invista voluntarily dismissed the case. On August 15, 2008, Invista S.à.r.l., along with Invista North America S.à.r.l. and Invista Technologies S.à.r.l., filed suit against Rhodia and DuPont in the District

Court for the Southern District of New York. Rhodia moved to dismiss or stay the case in favor of arbitration. Rhodia also filed a motion to dismiss the case for lack of subject matter jurisdiction, which the court granted. Invista subsequently filed an amended complaint against only Dupont, invoking the court's diversity jurisdiction.

On November 12, 2008, Invista filed this lawsuit against Rhodia in the Court of Chancery of the State of Delaware, bringing claims of misappropriation and conversion of trade secrets, unfair competition, tortious interference with contracts, and conspiracy to misappropriate trade secrets. On December 12, 2008, Rhodia removed the action to this Court pursuant to 9 U.S.C. § 205. Rhodia then filed the motion now before the Court. Rhodia seeks dismissal of this action or a stay, either pursuant to 9 U.S.C. § 3 or this Court's discretionary authority to enter a stay. The Court previously granted Rhodia's Motion to Stay Discovery Proceedings pending the Court's ruling on the Motion to Dismiss or Stay Proceedings in Favor of Arbitration.

## II. DISMISSAL OR MANDATORY STAY

### A. Standard

Under Federal Arbitration Act ("FAA"),

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (2006). While the FAA requires courts to stay proceedings pending the outcome of arbitration, "district courts may dismiss an action if all the issues raised are arbitrable and must

be submitted to arbitration." BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp., 224 F.R.D. 581, 585 (D. Del. 2004) (citing cases).

A court faced with a motion to dismiss or stay proceedings pending the completion of arbitration must determine "(1) whether the parties entered into a valid arbitration agreement; and (2) whether the specific dispute falls within the scope of the agreement." Id. (citing John Hancock Mutual Life Ins. Co. v. Olick, 151 F.3d 132, 136 (3d Cir. 1998)). In addressing the first question, courts apply the summary judgment standard. Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 n.9 (3d Cir. 1980). The Third Circuit Court of Appeals has explained this standard as follows:

> Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement. The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.

Id. at 54.

**B. Discussion**

In this case, the parties disagree as to whether Rhodia may invoke the arbitration provision in the JVA, whether Invista may be bound by the arbitration provision, and whether Invista's claims in this lawsuit fall within the scope of the JVA. The Court finds that Invista may not be bound by the arbitration provision in the JVA, and therefore Rhodia's motion to dismiss or for a mandatory stay pending arbitration will be denied.

Rhodia argues that although Invista is not a party to the JVA, Invista is estopped from avoiding arbitration because it has benefitted from the JVA. A non-signatory can be bound by an

arbitration agreement "under traditional principles of contract and agency law." E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S. ("DuPont"), 269 F.3d 187, 194 (3d Cir. 2001) (quoting Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd., 181 F.3d 435, 444 (3d Cir. 1999)).[1] One such principle is the doctrine of estoppel, under which "courts have held non-signatories to an arbitration clause when the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." DuPont, 269 F.3d at 199 (citing Thomson-CSF, S.A. v. American Arbitration Assoc., 64 F.3d 773, 778 (2d Cir. 1995)). "Generally, these cases involve non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." DuPont, 269 F.3d at 200. A non-signatory may also be bound by an arbitration provision in a contract when it brings claims based on other provisions of the contract. See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000) (finding non-signatory plaintiff estopped from refusing to arbitrate in accordance with contract provision where "contract provide[d] part of the factual foundation for every claim asserted by [plaintiff] against [defendant]").

In this case, Rhodia advances three reasons why Invista should be estopped from resisting

---

[1] The Supreme Court recently held that a non-party to an arbitration agreement may seek a stay pursuant to 9 U.S.C. § 3 "if the relevant state contract law allows him to enforce the agreement." Arthur Andersen LLP v. Carlisle, 129 S. Ct. 1896, 1903 (2009). Similarly, state law determines whether a non-party may be bound by an arbitration agreement. See id. at 1902 ("[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." (internal quotation marks and citation omitted)). In this case, neither party has discussed what state's (or country's) law should apply. However, they agree that estoppel is one theory under which an entity may be bound by an arbitration provision in a contract it has not signed. Because the parties agree on this point, the Court will analyze whether the requirements for estoppel have been met in this case.

the arbitration clause in the JVA. First, Rhodia argues that Invista has benefitted from the JVA because it is seeking to enforce the confidentiality provision of the JVA through its claims in this case. However, a plaintiff will not be bound by an arbitration provision when its claims are related to but not directly based on the agreement. See DuPont, 269 F.3d at 200-01. In DuPont, the plaintiff, a non-party to a written agreement containing an arbitration clause, sued a party to the contract and its parent company, alleging a breach of an oral agreement to fulfill obligations in the written agreement. Id. at 190-91, 192-93. The DuPont court noted that the plaintiff's claims arose, "at least in part, from the underlying Agreement" and arguably "require[d] proof that [one of the defendants] ultimately breached the underlying Agreement." Id. at 200, 201. The Court still found that the plaintiff was not bound by the arbitration provision in the Agreement because the plaintiff's claim was primarily based on the oral agreement. Id. at 201. Here, Invista's tortious interference claim is not related to the JVA. Furthermore, Invista's other claims, which are based on Rhodia's misuse of information gained through participation in the joint venture, are not directly based on the confidentiality provision in the JVA. Therefore, the Court finds that Invista is not estopped from resisting arbitration based on the nature of its claims in this action.

Second, Rhodia argues that Invista has benefitted from the JVA by actively participating in the management of Butachimie. However, Invista's right to participate in the management of Butachimie does not come from the JVA.

Third, Rhodia argues that Invista has exploited the JVA's confidentiality provisions to maintain its market dominance. Rhodia argues that Invista has asserted that it is the owner of the Gen I technology and receives direct benefits of revenue, market position, and reputation from

owning that technology. However, Invista's ownership of the Gen I technology does not come from the JVA. Rather, it comes from Invista's contracts with DuPont.

In sum, the Court finds that Invista is not estopped from avoiding the arbitration provision in the JVA. Therefore, dismissal or a stay pursuant to the FAA is not appropriate.

**III. DISCRETIONARY STAY**

Even if a court is not required by the FAA to stay litigation, the court may, in its discretion, grant a stay pending the outcome of the arbitration. See E.I. duPont de Nemours and Co. v. Rhodia Fiber and Resin Intermediates, S.A.S., 197 F.R.D. 112, 128 (D. Del. 2000) ("This court has discretion to grant or deny a stay pending the decision in another proceeding."), aff'd in part and appeal dismissed in part, DuPont, 269 F.3d 187. However, a court should grant such a stay only when there are "'exceptional' circumstances, the 'clearest of justifications,' . . . justify[ing] the surrender of [its] jurisdiction." CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc., 381 F.3d 131, 139 (3d Cir. 2004) (quoting Moses H. Cone Hospital v. Mercury Const. Corp., 460 U.S. 1, 25-26 (1983)). The party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward . . . ." CTF Hotel, 381 F.3d at 139 (quoting Landis v. North Am. Co., 299 U.S. 248, 255 (1936)). Judicial efficiency alone does not justify a stay pending the outcome of arbitration. See CTF Hotel, 381 F.3d at 139.[2]

---

[2] Rhodia, without addressing the standard set forth in CTF Hotel, argues that a different standard should apply. Specifically, Rhodia argues that a court should grant a stay pending the outcome of arbitration if "(a) 'there are *issues* common to the arbitration and the court, and . . . those *issues* will finally be determined by arbitration,' (b) the stay would facilitate arbitration, and (c) the stay would not harm the party opposing the stay." (Def.'s Reply Brief at 12 (citing Birmingham Assocs. Ltd. v. Abbott Labs., 547 F. Supp. 2d 295, 302 (S.D.N.Y. 2008)). This Court must apply the standard articulated by the Third Circuit Court of Appeals, and not the standard advanced by Rhodia.

Here, Rhodia argues that a discretionary stay is appropriate because the issues in this case are inseparable from the issues in the ICC arbitration, Rhodia will not hinder the ICC arbitration, and Invista will not be harmed by a delay in this litigation. The Court finds that even if Rhodia's assertions are correct, they do not amount to "exceptional circumstances" justifying a stay. Therefore, the Court will deny Rhodia's request for a discretionary stay.

**IV. JURISDICTION OF THIS COURT**

Rhodia removed this action from state court pursuant to 9 U.S.C. § 205, which provides for removal to federal court "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards]." In light of the Court's conclusion that Invista is not bound by the arbitration provision in the JVA, the jurisdiction of the Court is unclear. Therefore, the parties will be ordered to file briefs within thirty days of the date of this Opinion and Order addressing whether this Court has jurisdiction over this case.

**V. DISCOVERY**

Given the uncertainty regarding the Court's jurisdiction over this action, Invista's motion for an Expedited Rule 16(b) Conference will be dismissed. If the court determines that it has subject matter jurisdiction, Invista may re-file its motion.

**VI. CONCLUSION**

For the foregoing reasons, Rhodia's Motion to Dismiss or, in the Alternative, Stay Proceedings Pending Arbitration is denied. Further, the parties must submit briefs within thirty days addressing the issue of whether this Court has jurisdiction over the case. Finally, Invista's Motion for an Expedited Rule 16(b) Conference is dismissed without prejudice. An

accompanying Order shall issue today.

Dated: 5-20-09

/s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge